Filed 4/11/25  P. v. O'Brien CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082833 |
| v. | (Super. Ct. No. FWV19001320) |
| MICHAEL PATRICK O'BRIEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid A. Uhler, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

After defendant and appellant Michael Patrick O'Brien successfully appealed in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), on remand defendant urged the trial court to dismiss or reduce the firearm enhancement to a lesser included enhancement. The trial court refused, leaving the original sentence fully intact. Defendant again appeals, arguing the trial court abused its discretion in declining to strike or impose a lesser enhancement because the court did not properly apply the public safety exception under section 1385. We disagree and affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant had a son with his ex-girlfriend, Desseray Mariscal. Shortly after they broke up, Mariscal began a relationship with the victim, Rudy Areyan. (*O'Brien I*, *supra*, E074516.)

Mariscal and Areyan got into an argument when they were doing laundry together at a laundromat. Mariscal left the laundromat with her son in her car and told Areyan that she needed to "cool off." Areyan followed Mariscal in his car as she drove away. Mariscal texted him, telling him to go away, but he continued following her. (*O'Brien I*, *supra*, E074516.)

---

[1] The factual background is drawn from this court's unpublished prior appeal from defendant's direct appeal, case No. E074516. (*People v. O'Brien* (June 22, 2021, E074516) [nonpub. opn.], as modified on denial of reh'g (July 7, 2021) (*O'Brien I*).)

While driving, Mariscal called defendant and told him about the situation. Defendant was concerned about his son and told Mariscal to meet him where he was. He told Mariscal that he would "deal with it." Mariscal drove to where defendant was located. (*O'Brien I*, *supra*, E074516.)

According to Mariscal, when she arrived at defendant's location, defendant was outside waiting for her and Areyan, who was still following her. Mariscal and Areyan then parked, and Areyan got out of his car and walked toward defendant. But, according to an eyewitness, Mariscal was following Areyan when he parked. After he parked, defendant got out of the passenger seat of Mariscal's car and walked toward Areyan. (*O'Brien I*, *supra*, E074516.)

When Areyan approached defendant, defendant pulled out a gun and shot Areyan in the top of the head. Areyan's wounds were consistent with being shot while bending over and facing defendant. Defendant then ran to Mariscal's car, got inside, and Mariscal drove away and dropped him off near the freeway. (*O'Brien I*, *supra*, E074516.)

A jury convicted defendant of first degree murder (Pen. Code, § 187, subd. (a)[2]) and found true the allegation that he discharged a firearm, causing great bodily injury or death, in the commission of the crime (§ 12022.53, subd. (d)). The trial court found that defendant had a prior conviction that qualified as both a prior serious felony (§ 667, subd. (a)) and a strike prior (§ 667, subds. (b)-(i)). The court sentenced defendant to 75 years to life, consisting of an indeterminate term of 25 years to life for the murder, doubled for

---

[2] Unless otherwise noted, all further statutory references are the Penal Code.

3

defendant's prior strike conviction, plus 25 years for the firearm enhancement. (See *O'Brien I*, *supra*, E074516.) Defendant's conviction was affirmed on direct appeal in *O'Brien I*.

In his appeal, defendant asserted, among other things, that the trial court failed to recognize its discretion to consider reducing the firearm enhancement to a lesser included enhancement. We originally disagreed and affirmed the judgment. However, after defendant petitioned for review, the California Supreme Court resolved in *Tirado* that trial courts have discretion to reduce section 12022.53 firearm enhancements to uncharged lesser included enhancements. In light of that decision, the Supreme Court transferred defendant's case back to this court for further consideration. We remanded the matter to allow the trial court to consider whether to reduce the firearm enhancement in light of *Tirado* and to resentence defendant accordingly. (*People v. O'Brien* (July 8, 2022, E074516) [nonpub. opn.] (*O'Brien II*).)

Upon remand, noting defendant's "extreme mental illness" and difficult childhood, defendant's counsel requested a full resentencing a hearing and urged the trial court to dismiss the firearm enhancement and prior strike conviction under the factors outlined in amended section 1385. Specifically, counsel argued that the court should consider dismissing the prior strike because: (1) multiple enhancements were alleged; (2) application of enhancements resulted in a sentence over 20 years in state prison; (3) the offense was connected to mental illness, specifically PTSD related to a 2016 gunshot wound; (4) the offense was connected to childhood trauma, including the loss of an

4

important parental figure to gang violence when he was 16 years old; (5) defendant's efforts at rehabilitation, including his participation in programs at the CDCR; and (6) defendant's youth of being 23 years old at the time of the offense. In support, counsel submitted a biopsychosocial assessment, a CDCR certificate indicating defendant had completed 156 hours of anger management, and numerous character letters.

According to the biopsychosocial assessor, defendant appeared to be "authentic throughout the assessment and provided insight." Defendant acknowledged his gang involvement and noted that he was raised in a neighborhood where drug use and violence were rampant. Defendant began abusing methamphetamine when he was 16 years old and relied on drugs as a coping mechanism for the violence he experienced from his father and witnessed in his neighborhood. At that age, defendant also lost his uncle to gang violence, and according to his mother, this was a pivotal loss that changed the trajectory of defendant's life. As a young adult, defendant developed PTSD after nearly dying from a gunshot wound. Defendant acknowledged to the assessor that he has "acted impulsively and with anger throughout his life" and that he has "struggled with controlling his anger and aggression towards others."

At the hearing, defendant's counsel maintained defendant was entitled to a full resentencing hearing. Counsel also reiterated that defendant's conduct was connected "to his post-traumatic stress of being a victim of [a] gunshot wound in 2016" and argued "the nexus between the PTSD and the aggression impulsivity and unpredictability are tied together in the mental health issue which would weigh in favor of the granting of the

5

motion." The trial court declined to conduct a full resentencing hearing, stating it did not have jurisdiction to do so. The prosecutor thereafter pointed out that section 1385, subdivision (c) states certain factors the court should consider in deciding whether or not to strike or give a lesser gun enhancement and argued the court should not strike the gun enhancement or impose a lesser gun enhancement. The prosecutor also stated that the court did not have jurisdiction to consider "other issues outside of the scope that it's on for remitter," and that even if "under an abundance of caution, that if the Court were able to I would still argue that he wouldn't be appropriate for another *Romero* motion to be granted. I know he's asked for that previously the Court has denied it from my recollection. I don't see any changes. This is a recent strike. I don't think the Court, even if it did have jurisdiction, my request would be that the Court still not grant any sort of *Romero* motion, even if it did have jurisdiction to argue as such. And with that, I would submit."

After further argument by defense counsel, the trial court gave a detailed explanation of its ruling as follows: "For the record, I did have an opportunity to review the presentence investigation report, all the materials submitted on behalf of the defendant for his petition—strike that, for the remitter, including the motion for resentencing and the People's opposition. [¶] In terms of using my discretion to strike the prior serious/violent felony that was found true, I don't believe I have jurisdiction to relitigate that issue. I am only empowered to act in accordance with the directions from the Court of Appeal. And they remanded it solely for the purpose of reducing the

6

firearm enhancement. If I did have the authority I would stand by my original ruling in denying the striking of the prior strike for the same reasons stated at the time of sentencing. [¶] As far as reducing the enhancement pursuant to [section] 12022.53[, subdivision] (b)(c) or [section] 12022.5, I believe that if the Court should do this at the defendant's request it would be contrary to the furtherance of justice and reduction of the enhancement would endanger public safety. Again, the Court cannot lose sight of the heinous actions of the defendant in shooting and killing an unarmed man during an ambush. I reread two of the victim impact letters submitted by his brother and wife and it is very clear that to reduce the defendant's sentence would be an injustice to them after they poured out their grief and trauma to the court during the sentencing hearing. Mr. Areyan will never have an opportunity to return to his family. The defendant has a lengthy history of violent conduct, starting with stabbing two students with pencils when he was 13 years old; a conviction for [section] 245[, subdivision] (a)(4), involving the stabbing of two victims in 2013; and domestic violence and criminal threats in 2017. In addition, I don't believe the factors outlined in . . . [s]ection 1385 subsection (c), subsection (2) subsection (A) through (I) support the reduction of the enhancement. The sentence has nothing to do with racial discrimination; only one single enhancement was imposed since the strike is a penalty provision not an enhancement, according to case authority cited by the prosecution. And aside from the firearm enhancement, the defendant was sentenced to 50 years to life on the murder conviction, so the firearm enhancement could not result in a sentence over 20 years. However, if the

7

Court does consider it to be two enhancements and imposing the enhancement does result in a sentence over 20 years, the Court still is using its discretion not to reduce the enhancement because public safety and the interest of justice weighs against reducing the enhancement. [¶] Based upon the defendant's willfulness, deliberation, and premeditation, and lying in wait, the Court does not believe that any mental illness, prior victimization or childhood trauma substantially contributed to the defendant's involvement in the commission of the murder. He was raised by two working parents that tried their best. In all the cases that he received school sanctions, including suspensions for stabbing two students with pencils and tagging his gang on school property, his parents almost always responded to calls from the school in an attempt to handle the situations. I note at one point they tried to send him to military school in hopes to get away from his chosen gang lifestyle. His claims of child abuse by his father are not supported by any other evidence. To the contrary, his mother denied having any knowledge of abuse nor have any other family members come forward to substantiate his claims. And by his own admission, in most instances the physical punishment at the hands of his father sounded more like an attempt to discipline rather than child abuse. In review of the defendant's own statement in support of his petition, it is clear that his parents did what all parents would do when faced with a child that, as his mother said, made choices that she did not condone or agree with. I do appreciate his family members and friends writing character letters on his behalf, but to say that he was simply misguided is not an accurate portrayal of who he is and what he has done. [¶] As far as

8

the PTSD caused by being a victim of a shooting at age 21, there doesn't seem to be any evidence that this prior victimization had substantially contributed to the defendant's involvement in the murder when you see his pattern of assaultive conduct far preceded this incident and he made the choice to become a member of a gang. Losing Joseph, his father figure at age 16, I am sure was a very difficult time for him. But again, based upon his school records and by his own admissions, he exhibited a pattern of violence before the loss. [¶] In review of the final factors outlined in [section] 1385[, subdivision] (c), the current offense is a violent felony. The defendant was not a juvenile when he committed the offense. The enhancement is not based upon a prior that is more than five years old, and, obviously, the firearm was operable and loaded. [¶] In reviewing the biopsychosocial assessment, what was extremely troubling was reading the defendant's statements about his violent tendencies, which does in fact endanger public safety, quote, 'Dad has a bad temper and I have a bad temper too. I did violent stuff thinking it was okay. I am a compulsive thinker. Most of the things I do is in a violent way because that's what I'm used to.' He feels on edge and paranoid during encounters with strangers, acquaintances and even close peers. And as a defense mechanism, he often acts out before someone can get the best of him. He further admitted that, quote, 'When I have violent outbursts, I take everything to the extreme,' unquote. His mother also noted these violent outbursts even when the defendant was a young child. [¶] During his prior incarceration to state prison, prior to the murder, he participated in the exact same programs he participated in now. And obviously, his attendance then did not have any

9

effect in changing his attitude and behavior towards violence. [¶] And finally, despite the letters indicating that the defendant is remorseful for the commission of the murder, not once, in any documents reviewed by the Court did he ever share his own personal statement of remorse, which again, is a factor to consider when protecting the interest of public safety. [¶] So, for all the reasons stated above, I am not going to use my discretion to reduce the firearm enhancement to any lesser charge and the previous sentence imposed by this court shall remain." Defendant timely appealed.

## III.

## DISCUSSION

Defendant contends the matter must be remanded for a new sentencing hearing because the trial court abused its discretion in determining whether to dismiss the firearm enhancement or to impose a lesser included enhancement. Specifically, he claims the court did not properly apply the public safety exception under section 1385 because the statute requires the court to evaluate whether he poses a danger to public safety when he is released rather than at the time of sentencing, including whether his release is subject to a further risk determination by the Board of Parole. The People respond that the trial court did not abuse its discretion, analyzed the appropriate factors, and the record does not affirmatively show the court failed to consider defendant's risk of danger to the public at the time of his potential release on parole.

Our Supreme Court has recently clarified the framework within which a trial court must review requests to strike enhancements in this situation, as well as the proper

analysis for assessing the harmlessness of an error where a trial court fails to properly exercise its discretion. (See *People v. Walker* (2024) 16 Cal.5th 1024, 1033-1035 (*Walker*) [interpreting section 1385, subdivision (c)(2)]; *People v. Salazar* (2023) 15 Cal.5th 416, 425 [explaining requirements of harmless error analysis under similar circumstances].)

Under section 12022.53, subdivision (h), "[t]he court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." The court may also impose a lesser included, uncharged section 12022.53 enhancement if facts supporting imposition of the lesser enhancement have been alleged and found true. (See *People v. Tirado*, *supra*, 12 Cal.5th at p. 697.)

In October 2021, the Governor signed Senate Bill No. 81 that added a new subdivision (c) to section 1385. (Stats. 2021, ch. 721; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295 (*Mendoza*).) Senate Bill No. 81 amended "section 1385 to specify mitigating circumstances that the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16.)

Section 1385, subdivision (c)(1) states: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Under section 1385, subdivision (c)(2), "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that

any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Section 1385, subdivision (c)(2), provides nine non-exclusive mitigating factors a trial court should consider, such as racial impact, whether multiple enhancements are alleged in a single case, whether the crimes are connected to defendant's mental illness, whether the defendant experienced childhood trauma or abuse, and whether application of the enhancement could result in a sentence over 20 years.  (See § 1385, subd. (c)(2)(A)-(I).)  "[S]ection 1385[, subdivision] (c)(2) does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'"  (*Mendoza*, *supra*, 88 Cal.App.5th at p. 299.)

In *Walker*, *supra*, 16 Cal.5th 1024, our high court addressed how section 1385, subdivision (c)(2)'s "great weight" language impacted a trial court's sentencing discretion.  Based on that section's plain language (*Walker*, *supra*, at p. 1033), the court found it "clear that the structure [of section 1385, subdivision (c)] does not 'presume' [citation] an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this

'furtherance of justice' (§ 1385, subd. (c)(1)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id.*, subd. (c)(2)). Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.'" (*Ibid.*, citing *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098-1099 (*Ortiz*).)[3]

Disagreeing with the appellate court in *People v. Walker* (2022) 86 Cal.App.5th 386,[4] the California Supreme Court determined that the statute's plain language did not create a rebuttable presumption that can only be overcome by a finding that dismissal endangers public safety but "emphasize[d] . . . that in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Walker*, *supra*, 16 Cal.5th at p. 1033.)

---

[3] The court also cited in part to the Advisory Committee comment to California Rules of Court, rule 4.428, which addresses "[f]actors affecting imposition of enhancements" and provides: "'Case law suggests that in determining the "furtherance of justice" the court should consider . . . the factors in aggravation and mitigation including the specific factors in mitigation of section 1385[, subdivision] (c); and the factors that would motivate a "reasonable judge" in the exercise of their discretion.'" (*Walker*, *supra*, 16 Cal.5th at p. 1033.)

[4] The Court of Appeal "conclude[d] that section 1385's mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement . . . would endanger public safety." (*People v. Walker*, *supra*, 86 Cal.App.5th at p. 391.)

The Supreme Court proceeded to "consider what it means for a mitigating circumstance to 'weigh[ ] greatly in favor' . . . of dismissal." (*Walker*, *supra*, 16 Cal.5th at p. 1034.) The court adopted the *Ortiz* court's understanding as consistent with the statute's construction: "[A] trial court must 'engage[] in a holistic balancing with s*pecial emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal . . . .'" (*Id*. at p. 1036, quoting *Ortiz, supra*, 87 Cal.App.5th at p. 1096.) And "mitigating circumstances are entitled to 'increased significance and importance in the [court's] overall balancing of factors' under section 1385." (*Walker*, *supra*, at p. 1036.) The court explained: "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Id.* at p. 1036.)

Our Supreme Court concluded that its formulation gave "force to the 'great weight' standard: Pursuant to section 1385, subdivision (c)(2), absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of

14

an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'"  (*Walker*, *supra*, 16 Cal.5th at p. 1038.)

We review a trial court's decision whether to strike or reduce an enhancement under section 1385 for abuse of discretion.  (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.)  Likewise, we review for abuse of discretion the "court's determination that dismissal of [an] enhancement would endanger public safety."  (*Ibid*.)  Further, in assessing sentencing issues, we apply a presumption of regularity of judicial exercises of discretion.  (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)  "'"[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'"  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)  "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  But "'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.'"  (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

15

We conclude defendant has not shown the trial court abused its discretion in declining to reduce the firearm enhancement to a lesser enhancement. The court's explicit finding that such dismissal would endanger public safety, under *Walker*'s formulation of section 1385, subdivision (c)(2), means it was not required to "assign significant value to the [applicable] mitigating circumstances . . . ." (*Walker*, *supra*, 16 Cal.5th at p. 1038 ["absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present"]; accord, *Mendoza*, *supra*, 88 Cal.App.5th at p. 296 ["if the court finds [under section 1385, subdivision (c)(2)] that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances"].)

Defendant argues the trial court applied the wrong legal standard in making the endanger to public safety finding because the court failed to properly consider defendant's possible dangerousness at the time of his eventual release if he were sentenced to a lesser term. In support, he relies on *Gonzalez*, *supra*, 103 Cal.App.5th 215.

In *Gonzalez*, *supra*, 103 Cal.App.5th 215, the defendant argued that the trial court committed error by "focusing on whether [Gonzalez] 'presently' and 'currently' endangered public safety rather than assessing whether, looking forward, public safety would be endangered due to an earlier release from prison (i.e., in 50 years to life rather than in 75 years to life) if the enhancement was dismissed." (*Id*. at p. 224.) The *Gonzalez* court determined "the trial court erred because it considered only whether

16

Gonzalez *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.'" (*Id*. at p. 230.) The trial court had "specifically explained, 'I think presently [Gonzalez] does represent a danger to society, *and for that reason* . . . I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement.'" (*Id*. at p. 231.) Because the trial court in *Gonzalez* relied on that single factor for its decision, and "gave no indication of how it would rule if it did not limit its inquiry to Gonzalez's current dangerousness" (*ibid*.), the Court of Appeal concluded that the trial court's error was prejudicial. (*Id*. at p. 232.) It explained that, in deciding whether an enhancement's dismissal would endanger the public, sentencing courts should employ a "'forward-looking inquiry'" that not only accounts for the defendant's current dangerousness, but also considers "the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings." (*Id*. at p. 229.)

Here, the trial court's comments at the sentencing hearing do not demonstrate it interpreted section 1385 in the manner rejected by the appellate court in *Gonzalez*. Nor do its remarks reflect that the trial court expressly limited its analysis to defendant's current dangerousness. (Cf. *Gonzalez, supra*, 103 Cal.App.5th at p. 224.) Instead, the court explained that it could not "lose sight of the heinous actions of the defendant in shooting and killing an unarmed man during an ambush." After noting the impact the

17

murder had on the victim's family, the court enumerated defendant's extensive violent criminal history.

Thereafter, the court analyzed the factors enumerated in section 1385, subdivision (c). The court expressly rejected that the current sentence was based upon racial discrimination and observed that there was only a single enhancement involved in the case. (See § 1385, subd. (c)(2)(A)-(B) [articulating factors about racial disparity and whether multiple enhancements are involved in the case].) The court also noted that the lengthy nature of the underlying sentence was not attributable to the enhancement but rather to the Three Strikes Law, which required the 50-years-to-life term for the murder conviction. (§ 1385, subd. (c)(2)(C) [articulating a preference that enhancements not increase sentences to beyond 20 years].) The court further stated that even if the imposition of the enhancement somehow implicated concerns about a sentence greater than 20 years, "public safety and the interest of justice" weighed against enhancement reduction. The court also explained that defendant's "willfulness, deliberation, and premeditation, and lying in wait," precluded a finding that the murder was connected to mental illness or childhood trauma. (§ 1385, subd. (c)(2)(D)-(E).) The court noted that defendant was raised by two working parents who did their best to raise their son. They were involved and responsive to disciplinary issues that arose in the school environment. They tried to send him to military school to separate him from his gang affiliations. Defendant's self-serving assertions of child abuse claims were simply not substantiated. Likewise, the court noted that while defendant may have been the victim of a shooting at

18

age 21, there was no evidence showing that experience contributed in any way to the current murder. In its review of the final factors articulated in section 1385, subdivision (c), the court observed that the murder was indeed a violent offense, defendant was not a juvenile, the enhancement was not based upon conduct over five years old, and the firearm was obviously operable and loaded. (§ 1385, subd. (c)(2)(F)-(I).)

The court found the psychological assessment evidence to be troubling. The court explained that, by his own admission, defendant conceded that he had a "bad temper," that he "did violent stuff thinking it was okay," and that "'[m]ost of the things [he did] were] in a violent way because that's what [he's] used to.'" Defendant acknowledged feelings of paranoia and that he tended toward violent outbursts taken "'to the extreme.'" The court observed that defendant had participated in rehabilitative programs while in prison prior to the murder, but that these programs obviously had no "'effect in changing his attitude and behavior toward violence.'" The court further noted that while others spoke in favor of defendant and expressed that he was remorseful, it had found no instance in which defendant personally expressed remorse.

As explained above, the trial court did not specify, let alone limit, the temporal nature of that risk. In contrast to the facts of *Gonzalez*, here the trial court considered defendant's criminal and incarceration history, as well as his current offense, his character, and his prospects, after giving great weight and consideration to the mitigating circumstances raised by defense counsel. Indeed, given defendant's criminal history, nature of the crime, defendant's character and his prospect for the future, the court could

19

reasonably conclude defendant's early release would endanger public safety. (See *In re Coley* (2012) 55 Cal.4th 524, 561-562 [prior criminal history together with the nature of current offenses "may properly be viewed as an indicator of potentially significant future dangerousness"].) Based of the foregoing, we reject defendant's argument based on *Gonzalez.*

Even if the court failed to properly consider defendant's possible dangerousness at the time of his eventual release if he were sentenced to a lesser term, we find any error to be harmless. As previously explained, the "public safety exception" is an exception to the requirement to consider all the mitigating factors under section 1385, subdivision (c). However, here the court did consider all of the appropriate mitigating factors. As such, the court's public safety finding was irrelevant. Further, the *Gonzalez* court stated "it is conceivable that, if the trial court holds a new sentencing hearing in which it does not limit its inquiry to [the defendant]'s current dangerousness, it will decide to exercise its discretion under section 1385, subdivision (c)(2) in a different manner." (*Gonzalez, supra*, 103 Cal.App.5th at p. 231.) In this case, based on the trial court's well-reasoned statements, there is no likelihood the court would exercise its discretion differently.

In sum, we reject defendant's contentions that the trial court abused its discretion in declining to reduce his firearm enhancement under section 1385.

IV.

DISPOSITION

The trial court's postjudgment order declining to reduce the firearm enhancement to a lesser is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.